UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STC TWO LLC, by and through its attorney-in-fact, GLOBAL SIGNAL ACQUISITIONS II LLC, and GLOBAL SIGNAL ACQUISITIONS II LLC,<br><br>                   Plaintiffs,<br>   v.<br><br>THOMAS E. BRANHAM, SR., as trustee of THE TOM BRANHAM, SR. TRUST DATED FEBRUARY 8, 2016,<br><br>                   Defendant. | Case No: |

**VERIFIED COMPLAINT FOR MONEY DAMAGES,
DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF**

Plaintiffs STC Two LLC ("STC"), by and through its attorney-in-fact, Global Signal Acquisitions II LLC ("GSA"), and GSA, in its own capacity (collectively "Plaintiffs"), file this Verified Complaint against Defendant Thomas E. Branham, Sr., as trustee of The Tom Branham, Sr. Trust dated February 8, 2016 ("Defendant") and, in support thereof, states as follows:

**PARTIES**

1. Plaintiff STC Two LLC is a Delaware limited liability company with a principal place of business located at 12920 SE 38th St., Bellevue, WA 98006.

2. STC's sole member is SprintCom LLC, SprintCom LLC's sole member is Sprint Communications LLC, and Sprint Communications LLC's sole member is Sprint LLC.

3. Sprint LLC's sole member is T-Mobile USA, Inc., a Delaware corporation with a principal place of business in Bellevue, Washington.

4. STC is not a citizen of Ohio because neither it nor any of its members are citizens of Ohio.

5. Plaintiff Global Signal Acquisitions II LLC is a Delaware limited liability company with a principal place of business located at 8020 Katy Freeway, Houston, Texas 77024.

6. GSA's sole member is CC Holdings GS V LLC, whose sole member is Global Signal Operating Partnership, L.P.

7. Global Signal Operating Partnership, L.P.'s partners are CCGS Holdings Corp. and Global Signal GP LLC.

8. Global Signal GP LLC's sole member is CCGS Holdings Corp., a Delaware corporation with a principal place of business in Delaware.

9. GSA is not a citizen of Ohio because neither it nor any of its members are citizens of Ohio.

10. Defendant Thomas E. Branham, Sr. is an adult individual with an address of 9157 Hagerty Road, Ashville, OH 43103, and is a trustee of The Tom Branham, Sr. Trust dated February 8, 2016.

11. Upon information and belief, Defendant is a citizen of and is domiciled in Ohio and/or is not a citizen of the states in which the Plaintiffs are citizens, namely Delaware and Washington.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 because the matters in controversy are valued at an amount in excess of $75,000, exclusive of interest and costs, and this dispute is between citizens of different states.

13. Venue is proper under 28 U.S.C § 1391(b)(1)-(3). Defendant resides in the Southern District of Ohio. The leasehold estate that is the subject of this action is also situated in the Southern District of Ohio. Moreover, the acts or omissions giving rise to Plaintiffs' claims have occurred in the Southern District of Ohio.

14. Defendant and Plaintiffs are subject to personal jurisdiction in the Southern District of Ohio as they each reside and/or regularly do business in the Southern District of Ohio.

## FACTUAL ALLEGATIONS

15. This action arises out of a PCS Site Agreement dated July 6, 1998 (the "Original Lease"), as amended by the First Amendment to PCS Site Agreement dated July 22, 2013 (the "First Amendment," and together with the Original Lease, collectively, the "Lease"), pursuant to which Plaintiffs own and operate a wireless communications facility, including a communications tower and related improvements (the "Cell Site"), on a 2,500-square-foot portion of real property (the "Leased Premises") now owned by Defendant, which property is located at 797 Alton Street, Columbus, OH, 43219, otherwise known as Parcel No. 010-009920-00 (the "Property"). A true and correct copy of the Lease, slightly redacted to protect confidential information, is attached hereto as Exhibit "A".

16. A Memorandum of the Original Lease was recorded on April 30, 1999, at Instrument No. 199904300109025 in the Public Records of Franklin County, Ohio.

17. Despite the fact that the Cell Site has been in continuous operation for nearly two and a half decades, Defendant, in a clear breach of his plain and explicit contractual obligations as lessor under the Lease, recently installed a padlock on the gate through which Plaintiffs and its predecessors have accessed the Cell Site and Leased Premises for over twenty years, has refused

3

to remove the padlock, and has otherwise prohibited Plaintiffs and their invitees from freely accessing the Leased Premises and the Cell Site operating thereon.

18. In doing so, Defendant has: (a) jeopardized the safety and security of the Cell Site and those individuals trying to access same; (b) interfered with Plaintiffs' and its customers' operations at the Cell Site; (c) adversely impacted Plaintiffs' contractual relationships with their customers; and (d) placed at risk critical wireless and internet services utilized by, at least, the local communities surrounding the Cell Site, who rely on the Cell Site for services such as wireless 911.

### *History and Relationship of the Parties Regarding the Property in Question*

19. On October 12, 1979, Thomas E. Branham, Sr. obtained title to the Property by deed recorded at Instrument No. 197910160029892 in the Public Records of Franklin County.

20. On July 6, 1998, Thomas E. Branham, Sr. and Juanita Branham entered into the Lease with Plaintiffs' predecessor in interest, SprintCom, Inc., pursuant to which SprintCom, Inc. was authorized to construct, maintain and operate the Cell Site, which includes tower structures, equipment shelters, cabinets, meter boards, utilities, antennas, equipment, and related improvements and structures, and any uses incidental thereto. *See* Exhibit A, First Amendment to PCS Site Agreement, p. 1, ¶¶ 2 - 3.

21. By an unrecorded assignment—subsequently memorialized by an Affidavit of Facts Related to Title recorded at Instrument No. 200510190220154 in the Public Records of Franklin County, Ohio on October 19, 2005—SprintCom, Inc. assigned all of its right, title, and interest in the Original Lease, Leased Premises, and Cell Site to STC.[1]

---

[1] Section 5 of the Lease expressly authorizes subleases and assignments without notice to or consent of the landlord. Exhibit A, Lease, § 5.

4

22. On May 26, 2005, STC entered into a certain Master Lease and Sublease Agreement through which STC appointed GSA as its attorney-in-fact for specific purposes related to the Cell Site and authorized GSA to manage and operate the Cell Site on behalf of STC.

23. Pursuant to the aforementioned agreement, GSA subleases the maintenance and operational rights of the Cell Site and is authorized, among other things, to pay and collect rent relating to the Cell Site and/or the Leased Premises, to negotiate and execute amendments, extensions, or renewals of the Lease, to make necessary modifications to the Leased Premises and Cell Site, to maintain, upgrade and operate the Cell Site, and/or to sublease the Leased Premises and/or Cell Site to additional customers as permitted by the Lease.

24. On July 26, 2005, STC entered into a Site Designation Supplement to Master Sublease Agreement, which was recorded at Instrument No. 200507260148470 in the Public Records of Franklin County, pursuant to which STC subleased the Leased Premises to GSA.

25. Subsequently, STC, by and through its attorney-in-fact, GSA, on the one hand, and Thomas E. Branham, Sr. and Juanita Branham, on the other hand, executed the First Amendment on July 22, 2013, thereby amending certain terms of the Original Lease. *See* Exhibit A.

26. Notably, pursuant to the First Amendment, the Lease is to remain in effect through July 5, 2048, unless terminated earlier by Plaintiffs.

27. A Memorandum of the First Amendment was recorded on August 5, 2013, at Instrument Nos. 201308050131709 and 201308060133549 in the Public Records of Franklin County, Ohio.

28. On August 10, 2016, Thomas E. Branham, Sr. transferred the property, via quitclaim deed, to Defendant The Tom Branham, Sr. Trust dated February 8, 2016, which deed

5

was recorded at Instrument No. 201609060118835 in the Public Records of Franklin County, Ohio.

29. When Defendant acquired the Property, it took the Property subject to the pre-existing Lease, which had been executed by the Parties' respective predecessors in interest. In other words, upon acquiring the Property, Defendant stepped into the shoes of and became the lessor under the Lease.[2]

30. Thus, the current parties to the Lease are Defendant, as owner of the Property and lessor under the Lease, STC, by and through its attorney-in-fact GSA, as lessee under the Lease, and GSA, as sublessee of the Leased Premises and Cell Site.

### *Defendant's Ongoing Improper Conduct.*

31. As referenced above, the Lease explicitly granted to Plaintiffs a leasehold interest in the Property (i.e., the Leased Premises), along with:

> **[A] non-exclusive easement for reasonable access thereto and to the extent appropriate, in the discretion of [lessee], source of electric and telephone facilities.** The [Leased Premises] will be used by [lessee] for the purpose of installing, removing, replacing, modifying, maintaining and operating, at its expense, a personal communications service system facility ("PCS"), including, without limitation, antenna equipment, cable wiring, related fixtures and, if applicable to the [Leased Premises], an antenna structure. [Lessee] will use the [Leased Premises] in a manner which will not unreasonably disturb the occupancy of [lessor's] other tenants. **[Lessee] will have access to the [Leased Premises] 24 hours per day, 7 days per week.**

Exhibit A, PCS Site Agreement, ¶ 1 (emphasis added).

32. Further, Exhibit B to the Lease—the Memorandum of PCS Site Agreement—reinforces Plaintiffs' leasehold and easement interests in the Property, providing as follows:

---

[2] Defendant The Tom Branham, Sr. Trust dated February 8, 2016, had actual knowledge of the Lease, as Thomas E. Branham, Sr. previously held the Property in his own name and is the trustee of The Tom Branham, Sr. Trust dated February 8, 2016.

6

> Such [PCS Site Agreement] provides in part that [lessor] leases to [lessee] a certain site [Leased Premises] located at [the Property] within the property of [lessor] which is described in Exhibit A attached hereto, **with grant of easement for unrestricted rights of access thereto** and to electric and telephone facilities[.]

Exhibit A, Memorandum of PCS Site Agreement, ¶ 2 (emphasis added).

33. On or about July 5, 2022, Thomas E. Branham Sr. telephoned Plaintiffs and informed them that he intended to install a padlock on the gate at the entrance of the Property, which gate had never previously been locked. *See* Letter of Crown Castle, parent company of GSA, dated July 6, 2022, a copy of which is attached hereto as Exhibit "B".

34. In response to Mr. Branham's phone call, a representative of Crown Castle, GSA's parent company, wrote to Defendant on July 6, 2022, noting Plaintiffs' right(s) to 24/7 access, explaining that said right(s) must not be infringed, and proposing a solution that would allow Defendant to lock the gate without violating Plaintiffs' access rights. *See id*.

35. Nevertheless, since at least July of 2022, Defendant, through trustee Thomas E. Branham, Sr., has willfully breached the Lease by interfering with Plaintiffs' access, possession, use, and quiet enjoyment of the Leased Premises and the Cell Site, and has prohibited Plaintiffs from using the express access easement granted in the Lease and the accompanying memorandum.

36. Specifically, at some point in July, and in disregard of Plaintiffs' aforementioned letter, Defendant installed a padlock on the gate at the entrance of the Property without providing Plaintiffs a key or other means of access, thereby making it impossible for Plaintiffs to gain access to the Leased Premises and Cell Site.

37. In addition to installing a padlock on the gate, Defendant posted signage directing Plaintiffs to call Thomas E. Branham, Sr. in order to obtain access.

38. Since the padlock was installed, Plaintiffs and their customers have, on several occasions, attempted to access the Leased Premises, only to be turned away or otherwise refused access by Defendant, acting through Thomas E. Branham, Sr., who has also threatened physical violence upon persons attempting to lawfully access the Cell Site as authorized by the Lease.

39. For example, on or around July 18, 2022, Plaintiffs' subtenant customer attempted to access the Leased Premises and Cell Site to conduct routine maintenance and placed a call to the telephone number listed on the sign Defendant affixed to the recently-locked gate. Upon answering the call, Defendant, through Thomas E. Branham, Sr., refused to unlock the gate or otherwise provide access to the Cell Site and threatened serious bodily harm to Plaintiffs' invitees.

40. Each time a crew is dispatched to the Cell Site and denied access by Defendant, Plaintiffs incur labor costs and other charges with no corresponding benefit to Plaintiffs.

41. On September 1, 2022, Plaintiffs' representative again wrote Defendant, again demanding that Defendant immediately cease breaching the Lease by removing the padlock. *See* letter of Crown Castle dated September 1, 2022, attached as Exhibit "C".

42. Then, on September 16, 2022, Defendant sent a letter to Plaintiffs, stating that the locked gate "will stay," and that access would not be granted to anyone unless they called "two to three days in advance and have a copy of the work order." *See* letter of Defendant dated September 16, 2022, attached as Exhibit "D".

43. However, nothing in the Lease requires Plaintiffs to provide prior notice of their need to access the Cell Site, nor does the Lease require the presentation of "a work order," a term Defendant did not even attempt to define.

8

Case: 2:23-cv-00764-JLG-EPD Doc #: 1 Filed: 02/24/23 Page: 9 of 18  PAGEID #: 9

44. Defendant has continued to obstruct and impede Plaintiffs' access to the Cell Site in blatant violation of the Lease, which expressly entitles Plaintiffs to access "24 hours per day, 7 days per week."

45. Plaintiffs' and Plaintiffs' customers' right(s) to unfettered access is critical to the safe and successful operation of the Cell Site, as the equipment affixed to the cell tower and adjacent to it requires regular monitoring, maintenance, and replacement, and occasionally requires immediate/emergency attention.

46. At all times material hereto, Plaintiffs have acted in good faith and strictly complied with the terms of the Lease.

47. Plaintiffs have fully performed their obligations under the Lease in all material respects, including by paying ongoing monthly rent, and no condition precedent exists which would obviate the need for Defendant's performance thereunder.

48. Plaintiffs have paid and continue to pay monthly rent under the Lease, which payments Defendant continues to accept while simultaneously, continuously, and blatantly breaching the terms of the Lease.

49. It is apparent from Defendant's now six-month's long pattern of obstructive conduct that it is acting and will continue to act intentionally and in bad faith and will continue to refuse to honor its contractual and other legal obligations to Plaintiffs.

50. Plaintiffs are entitled to compensatory damages for, at least, the loss of use of the Leased Premises and Cell Site caused by Defendant's blatant breach(es) of the Lease, the diminution in value of the leasehold interest, the loss of the benefit of the bargain with Defendant for which substantial compensation has been paid, and the return of rents paid for rights and use of the Leased Premises which have been denied by Defendant.

9

51. Additionally, Defendant's failure to cooperate and refusal to permit access has caused and will continue to cause Plaintiffs to suffer damage to both its well-established and valuable business relationships with its subtenant customers and its reputation in the wireless communications industry generally, for which Plaintiffs are entitled to compensation and consequential damages.

52. Finally, in accordance with Sections 13 and 19 of the Lease, Plaintiffs are entitled to recover all reasonable attorneys' fees and costs incurred as a result of Defendant's blatant breach(es) of the Lease, including those associated with this lawsuit. *See* Exhibit A, PCS Site Agreement, ¶¶ 13, 19.

## COUNT I – BREACH OF CONTRACT
### (Plaintiffs v. Defendant)

53. Plaintiffs incorporate by reference the preceding paragraphs as though the same were fully set forth herein.

54. The Lease is a valid and binding agreement between Plaintiffs and Defendant.

55. The Plaintiffs have fully performed their obligations in all material respects pursuant to the Lease and are able and willing to continue performing to the full extent required by the Lease.

56. Pursuant to the Lease, Defendant explicitly granted to Plaintiffs "a non-exclusive easement for reasonable access [to the Leased Premises] and to the extent appropriate, in the discretion of [lessee], source of electric and telephone facilities." Exhibit A, PCS Site Agreement, ¶ 1.

57. Additionally, Section 1 of the Lease provides that "[lessee] will have access to the [Leased Premises] 24 hours per day, 7 days per week." *Id*.

58. Further, within Section 4 of the Lease, Plaintiffs are entitled to access to the Leased Premises at all times and to the quiet possession of the Leased Premises. *See* Exhibit A, PCS Site Agreement, ¶ 4.

59. Despite these clear and unequivocal provisions of the Lease, Defendant has installed a padlock on the gate at the entrance of the Property and is prohibiting Plaintiffs from accessing the Leased Premises and Cell Site and interfering with Plaintiffs' quiet enjoyment and possession of the Leased Premises.

60. Defendant's conduct unreasonably interferes with and violates Plaintiffs' leasehold and easement rights under the Lease.

61. Defendant's conduct in preventing or otherwise interfering with Plaintiffs' right(s) to unfettered access to the Leased Premises and Cell Site constitutes a material breach of the terms of the Lease.

62. All conditions precedent to Defendant's performance have occurred.

63. As a direct and proximate result of Defendant' breach of contract, Plaintiffs have been injured and have sustained monetary damages, including in the form of attorneys' fees that they are contractually entitled to recover.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages in excess of $75,000.00, together with continued interest, costs, expenses, and attorneys' fees, and Plaintiffs further request that this Court enter an injunction and/or award specific performance requiring Defendant to act in accordance with the Lease and provide Plaintiffs with unfettered access to the Leased Premises, and award such other and further relief as this Court deems just and proper.

## COUNT II – DECLARATORY RELIEF
**(Plaintiffs v. Defendant)**

64. Plaintiffs incorporate by reference the preceding paragraphs as though the same were fully set forth herein.

65. This action is filed, in part, pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201, to determine an actual and justiciable controversy regarding the Parties' rights under the Lease.

66. Despite Plaintiffs' repeated demands that Defendant remove the padlock and otherwise refrain from impeding Plaintiffs' and Plaintiffs' customers' access to the Cell Site and Leased Premises, Defendant has continually and willfully refused to do so, in violation of the Lease.

67. Thus, an actual, justiciable controversy exists between the Parties concerning their respective rights and obligations under the Lease.

68. Accordingly, Plaintiffs request a judicial determination and declaration setting forth the Parties' rights and obligations, which is necessary and appropriate in order to: (a) avoid a multiplicity of actions; (b) enable the Parties herein to ascertain their rights and duties with respect to the Cell Site and the Leased Premises; and (c) prevent any obstruction of or interference with Plaintiffs' right(s) to unfettered access to the Cell Site and/or Leased Premises.

69. Declaratory relief will clarify the rights and obligations of the Parties and is, therefore, appropriate to resolve these actual and justiciable controversies.

70. Plaintiffs are also entitled under the Lease to recover all reasonable costs and attorneys' fees resulting from Defendant's wrongful acts and omissions and hereby demand the same.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant as follows:

a. Declaring that the Lease is a valid and enforceable agreement, such that the Parties are required to act in accordance with its terms;

b. Declaring that Plaintiffs have a non-exclusive easement over and through Defendant's Property for access to the Leased Premises;

c. Declaring that Plaintiffs are entitled to unfettered, 24 hours per day, 7 days per week, access to the Leased Premises and Cell Site;

d. Declaring that Defendant's installation of a padlock on the gate at the entrance of the Property constitutes a breach of the Lease;

e. Requiring Defendant to remove the padlock from the gate and prohibit Defendant from interfering with Plaintiffs' access to the Leased Premises and/or Cell Site;

f. Declaring that Defendant is prohibited from interfering with Plaintiffs' and any of the their invitees' or customers' maintenance and operation of the Cell Site; and

g. Awarding to Plaintiffs attorneys' fees, all of their costs of suit and such other relief, in law and equity, as this Honorable Court deems just and appropriate or as is otherwise permitted by law.

## COUNT III – PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### (Plaintiffs v. Defendant)

71. Plaintiffs incorporate by reference the preceding paragraphs as though the same were fully set forth herein.

72. Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs request a preliminary and permanent injunction, enjoining the Defendant from: (1) blocking, obstructing, or otherwise interfering with Plaintiffs' express access easement over the Property to access the Leased Premises and/or Cell Site; (2) blocking, obstructing, or otherwise interfering with Plaintiffs' maintenance and operation of the Cell Site; (3) impeding, in any way, Plaintiffs' right(s) under the Lease to 24 hour, 7 day a week access to the Leased Premises and/or Cell Site; and (4) maintaining a padlock on the gate at entrance of the Property.

73. As explained in detail in Plaintiffs' Motion for Preliminary Injunction and brief in support of same, which are incorporated herein by reference, Defendant's actions threaten not only Plaintiffs' business and property interests and relationships with its subtenant customers, all of which have been fostered over many years, but also the Franklin County neighborhoods that rely upon the wireless service for work, school, and safety.

74. Additionally, Defendant's conduct in preventing Plaintiffs from accessing the Leased Premises and Cell Site interferes with Plaintiffs' property rights under the Lease, for which Plaintiffs' have paid substantial consideration.

75. An injunction enjoining Defendant's interference with Plaintiffs' access rights is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Specifically, given that the equipment affixed and adjacent to the Cell Site requires regular monitoring, maintenance, and/or replacement in order to function properly, the wireless networks facilitated by the Cell Site will cease functioning if Defendant's wrongful conduct persists.

76. If Defendant's wrongful conduct continues, wireless/cell service in the area will be compromised, thereby adversely affecting not only Plaintiffs' relationships with its customers, who provide wireless services to their subscribers, but also those who live, work and attend school in the areas surrounding the Cell Site and rely on wireless service to safely and successfully conduct their daily lives.

77. If an injunction enjoining Defendant's actions is not granted, greater injury will result to Plaintiffs as they will be deprived of their rights under the Lease, for which they have paid substantial consideration.  Moreover, as noted above, those who live, work and attend school near the Cell Site will be adversely affected absent the injunction requested by Plaintiffs.

14

78. An injunction prohibiting Defendant from interfering with Plaintiffs beneficial use and enjoyment of and access to the Leased Premises and Cell Site is necessary to protect Plaintiffs' interests, and will restore the status quo as it existed prior to Defendant's unlawful actions.

79. Plaintiffs' rights to relief are clear, as Defendant is blatantly breaching express provisions of the Lease, and they are likely to succeed on the merits of their claims against Defendant.

80. Plaintiffs' requested injunction is reasonably suited to abate Defendant's offending and unlawful activities and is no broader than necessary to protect Plaintiffs' contractual and property rights.

81. Plaintiffs' requested injunction will not adversely affect public interest. Quite to the contrary, the public interest will be served if the requested injunction is granted, as the Franklin County communities surrounding the Cell Site will be guaranteed continued access to essential wireless communications and emergency services.

82. Plaintiffs' rights are clear and the wrongs to be remedied are manifest.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an injunction, preliminarily and permanently thereafter, enjoining and restraining Defendant from:

    a. Blocking, obstructing, or otherwise interfering with Plaintiffs' express access easement over the Property to access the Leased Premises and/or Cell Site;

    b. Blocking, obstructing, or otherwise interfering with Plaintiffs' maintenance and operation of the Cell Site;

    c. Infringing Plaintiffs' rights under the Lease to 24 hour, 7 day a week access to the Leased Premises and/or Cell Site; and

    d. Maintaining a padlock on the gate at the entrance of the Property, or otherwise interfering with Plaintiffs' access rights in any way.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

A. Damages in excess of $75,000, plus interest at the maximum rate allowed by law for Defendant's unlawful actions from the earliest date allowed by law until paid in full, and all costs incurred;

B. For a judicial determination and declaration setting forth the Parties' rights, obligations and duties relative to the Cell Site and the Leased Premises as follows:

   a. Declaring that the Lease is a valid and enforceable agreement, such that the parties are required to act in accordance with its terms;

   b. Declaring that Plaintiffs have a non-exclusive easement over and through Defendant' Property for access to the Leased Premises and/or Cell Site;

   c. Declaring that Plaintiffs are entitled to unfettered, 24 hours per day, 7 days per week access to the Leased Premises and Cell Site;

   d. Declaring that Defendant' installation of a locked gate constitutes a breach of the Lease;

   e. Requiring Defendant to remove the locked gate and refrain from interfering with Plaintiffs' access easement to the Leased Premises and Cell Site;

   f. Declaring that Defendant is prohibited from interfering with Plaintiffs' and any of the their invitees' or customers' maintenance and operation of the Cell Site; and

   g. Awarding to Plaintiffs attorneys' fees, all of its costs of suit and such other relief, in law and equity, as this Honorable Court deems just and appropriate or as is otherwise permitted by law.

C. An order granting the following injunctive relief and/or specific performance enjoining Defendant from:

   a. Blocking, obstructing, or otherwise interfering with Plaintiffs' express access easement over the Property to access the Leased Premises and/or Cell Site;

   b. Blocking, obstructing, or otherwise interfering with Plaintiffs' maintenance and operation of the Cell Site;

   c. Infringing Plaintiffs' rights under the Lease to 24 hour, 7 day a week access to the Leased Premises and/or Cell Site; and

16

      d. Maintaining a padlock on the gate at the entrance of the Property, or otherwise interfering with Plaintiffs' access rights in any way; and

D. For pre- and post-litigation interest at the maximum rate provided by law;

E. For reasonable attorneys' fees;

F. For costs of this litigation; and

G. For any and all other relief to which the Court determines Plaintiffs are entitled.

Respectfully submitted,

Date: February 24, 2023

*/s/ Daniel Hyzak*
Daniel Hyzak, Esquire (0091298)
dhyzak@grsms.com
**GORDON REES SCULLY MANSUKHANI, LLP**
41 South High Street, Suite 2495
Columbus, Ohio 43215
T: (614) 340-5558
F: (614) 360-2130

*Counsel for Plaintiffs,*
*STC Two LLC, by and through its attorney-in-fact*
*Global Signal Acquisitions II LLC and*
*Global Signal Acquisitions II LLC*

# VERIFICATION

STATE OF TEXAS,
COUNTY OF HARRIS

I, _Kelly Stoner_, _Real Estate Manager_ for Crown Castle USA Inc., an affiliate of Plaintiff Global Signal Acquisitions II LLC, attorney-in-fact for Plaintiff STC Two LLC, being first duly sworn according to law, deposes and says that I am authorized to sign this Verification and that I have read the foregoing Verified Complaint and that the statements contained therein are true and correct, to the best of my knowledge, information, and belief. So far as on information and belief, I further state that I believe the information to be true.

_____
for Crown Castle USA Inc., an affiliate of
Global Signal Acquisitions II LLC, attorney-
in-fact for STC Two LLC

Sworn to me this _16_ day of _February_, 2023.

_____
Notary Public

CAROLYN KIMERY
Notary Public, State of Texas
Comm. Expires 03-10-2024
Notary ID 132396806