**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **STC Two LLC, by and through its attorney-in-fact, Global Signal Acquisitions II LLC, and Global Signal Acquisitions II LLC,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | **Case No. 2:23-cv-00764** |
| **Plaintiffs,** | : | |
| **v.** | : | **Judge Graham** |
| | : | |
| **Thomas E. Branham Sr., as trustee of The Tom Branham, Sr. Trust dated February 8, 2016.** | : | **Magistrate Judge Deavers** |
| | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court upon Plaintiffs' motion for summary judgment, filed January 31, 2024. ECF No. 49. The parties came before the Court for a hearing on the motion on April 18, 2024. Plaintiffs seek judgment as to all counts in their Complaint; to wit, Count 1: Breach of Contract, Count 2: Declaratory Judgment, and Count 3: Permanent Injunction. For the reasons that follow, Plaintiffs' motion for summary judgment (ECF No. 49) is **GRANTED in part and DENIED in part**, and summary judgment is **GRANTED**, *sua sponte*, in favor of Defendant as to Count 1.

## STATEMENT OF THE CASE

Plaintiffs, STC Two LLC and Global Signal Acquisitions II LLC, brought this action on February 24, 2023, seeking, *inter alia*, to enforce their rights under a lease. Pls.' Compl., ECF No. 1. Defendant is Thomas E. Branham Sr., as trustee of The Tom Branham, Sr. Trust dated February

[1]

8, 2016 (the "Trust").[1] Pursuant to the terms of the Lease[2] between the parties, Plaintiffs are authorized to use the leased premises on Defendant's property "for the purposes of installing, removing, replacing, modifying, maintaining and operating, at [Plaintiffs'] expense, a personal communications service system facility." *Id.* at ¶ 31. Additionally, the lease granted Plaintiffs an easement "for reasonable access" to the personal communications service system facility (hereinafter referred to as the "Leased Premises" or "Cell Site"), and specifically provided that Plaintiffs "will have access to the [Leased Premises] 24 hours per day, 7 days per week." *Id.* In July 2022, Defendant placed a padlock on the gate through which Plaintiffs were required to pass in order to access the Leased Premises. At the same time, Defendant posted signs directing Plaintiffs (or their agents) to contact Defendant for access to the premises. The lock remained until this Court issued a Temporary Restraining Order against Defendant on March 31, 2023. ECF No. 12. Throughout the period in which the gate was locked, Defendant continued to collect the rent from Plaintiffs due under the lease. Pls.' Mot. Summ. J., Ex. G, ECF No. 49-8. Because the lock prevented Plaintiffs from accessing the leased premises, they contend that Defendant breached the terms of the lease.

Defendant disputes neither the factual allegations constituting the breach nor the contention that his conduct was indeed a breach of the lease. Def.'s Mem. Opp'n, 1, ECF No. 52 ("[P]laintiff has ample proof of a breach of the lease agreement by [D]efendant."). In his memorandum in opposition to Plaintiffs' motion for summary judgment, Defendant only opposes the amount of damages and attorney fees that Plaintiffs seek to recover. *Id.* At the April 18, 2024 hearing on this

---

[1] The pertinent parcel of real property is deeded to the Trust, hence the form of pleading, though Defendant's estate arrangements do not otherwise bear on the issues now before the Court.

[2] As used herein, the "Lease" refers, collectively, to the rights and obligations of the parties as recited in the original "PCS Site Agreement," dated July 6, 1998, as well as the subsequent "First Amendment to PCS Site Agreement," dated July 22, 2013. Regardless, the parties do not dispute that these are the binding documents for the purposes of the instant matter.

matter, the parties each represented satisfaction as to the current arrangement between them—involving a daisy chain lock and unfettered access for Plaintiffs—which has been in place since this Court's Temporary Restraining Order, filed March 31, 2023.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379

[3]

(6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Finally, "A court may enter summary judgment sua sponte in favor of a nonmoving party so long as the losing party was on notice to present all desired evidence on the matter at issue." *QSI Holdings, Inc. v. Alford*, 382 B.R. 731, 736 (W.D. Mich. 2007), *aff'd sub nom. In re QSI Holdings, Inc.*, 571 F.3d 545 (6th Cir. 2009).

## DISCUSSION

### A. Breach of Contract

Plaintiffs' Complaint alleges in Count 1 that Defendant is liable for breach of contract. ECF No. 1, ¶¶ 53-63. As noted *supra*, Defendant does not dispute this claim, stating in his memorandum that he "has admitted on the record, in pleadings, by written discovery, and in his deposition testimony, that he padlocked the gate to the leased premises," and that, therefore, "[P]laintiff has ample proof of a breach of the lease agreement." ECF No. 52. Indeed, there is no dispute that Plaintiffs have a right to access the Leased Premises 24 hours a day, 7 days a week, and there is no dispute that Defendant padlocked the gate through which Plaintiffs would exercise that right.

[4]

However, to establish a breach of contract claim, Plaintiffs must also show "damages or loss resulting from the breach." ECF No. 49-1, 10 (citing *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469). Plaintiffs claim that they are entitled to damages equal to the total amount of rent paid to Defendant during the period in which he had padlocked the gate. In support, Plaintiffs cite Ohio caselaw which provides:

> The damages awarded for a breach of contract should place the injured party in as good a position as it would have been in but for the breach. Such compensatory damages, often termed "expectation damages," are limited to actual loss, which loss must be established with reasonable certainty.

*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 144, 684 N.E.2d 1261, 1266 (1996).

Defendant argues that Plaintiffs have not established "actual loss," because they still received the benefit of the bargain insofar as the cell tower remained fully operable on the leased premises throughout the breach. *See id.* (finding no actual loss because "Textron was in the same position after the breach as it would have been had the contract been fully performed; it received the full benefit of its bargain.") Indeed, in their motion for summary judgment, Plaintiffs point to no other form of "actual loss." Subsequently, pursuant to questions from the Court at a hearing on this motion, Plaintiffs conceded that they could provide no other evidence of "actual loss." Specifically, the Court asked if Plaintiffs suffered the loss or reduction of any subscriber revenue which could be attributable to Defendant's breach, and Plaintiffs conceded that they could show no such concrete loss. Thus, Plaintiffs do not adequately explain how recovery of the rent paid during the breach would operate to "place the injured party in as good a position as it would have been in but for the breach." *Id.* Therefore, while Defendant had indisputably breached the terms of the lease, Plaintiffs have not established "cognizable damages" necessary to sustain the claim in law.

[5]

So long as the moving party has been afforded an opportunity to present "all desired evidence on the matter at issue," a Court may enter summary judgment in favor of the nonmoving party. *QSI Holdings, Inc.*, 382 B.R. 731, 736. Plaintiffs have thoroughly briefed this issue; in their reply to Defendant's response in opposition, Plaintiffs directly addressed the argument that they could establish no "actual loss," again arguing that "damages in the amount of $14,618.70 merely places Plaintiffs in the position they would have been in had Defendant performed under the Lease." ECF No. 53, 7. The Court disagrees, finding that to return the rent would constitute a windfall to Plaintiffs, who have enjoyed the substantial benefit of continued cell tower operations on the leased premises before, during, and after the breach period. Indeed, Defendant may merely be the beneficiary of good fortune such that "the Cell Site remained operative and the public did not lose access to 911 emergency services," because "[o]therwise, the amount of damages would have included consequential damages and would have been significantly more." *Id.* But, at bottom, the evidence shows that Plaintiffs enjoyed the same good fortune in avoiding any cognizable damages, such as loss or reduction of subscriber revenue. Therefore, Defendant is entitled to summary judgment as to Count I of Plaintiffs' Complaint.

**B. Declaratory Judgment & Permanent Injunctive Relief.**

Count 2 of Plaintiffs' Complaint seeks declaratory relief. ECF No. 49, 14. To use its power of declaratory judgment, a court must be confronted with an "actual controversy." 28 U.S.C.A. § 2201 (West); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) ("The existence of an "actual controversy" in a constitutional sense is necessary to sustain jurisdiction under the Declaratory Judgment Act."). Additionally, the invocation of declaratory judgment power must be precipitated by "actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Nat'l Rifle Ass'n of Am.*, 132 F.3d at 279. Stated

differently, the controversy "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character," and not a hypothetical state of facts inviting an advisory opinion from the court. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241, 57 S. Ct. 461, 464, 81 L. Ed. 617 (1937).

In Count 3 of their Complaint, Plaintiffs seek a permanent injunction against Defendant. ECF No. 49, 20. When seeking a permanent injunction, a plaintiff must demonstrate:

> (1) That it has suffered an irreparable injury;
> (2) That remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) That, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) That the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

As to Count 3, Plaintiffs argue that they have established all four (4) factors, such that a permanent injunction is appropriate. Specifically, as to the first (1) and second (2) factors, Plaintiffs argue that the injury suffered—no unfettered access to the Leased Premises, in addition to the potential for future harm—is irreparable, and cannot be adequately remedied with monetary damages. ECF No. 49, 16-18. As to the third (3) factor, Plaintiffs argue that the balance of hardships favor a remedy in equity because Defendant suffers no discernible hardship by complying with the Lease (i.e., not locking the gate), whereas Plaintiffs would be deprived of their rights under the lease, for which they have paid valuable consideration. *Id.* at 18-19. And as to the fourth (4) factor, Plaintiffs argue that permanently enjoining Defendant from interfering with Plaintiffs' access pursuant to the Lease would serve public interests by ensuring reliable wireless

communications services. *Id.* at 19. In his briefing, Defendant does not offer any argument regarding a permanent injunction.

The Court finds the Plaintiffs' argument as to the permanent injunction well-taken. Their limited access to the Leased Premises cannot be cured by monetary damages. Injunctive relief "is the proper mode of enforcing an express easement" against a breach such as Defendant's. *1st Natl. Bank v. Mountain Agency, L.L.C.*, 2009-Ohio-2202, ¶ 49 (citing *Goldberger v. Bexley Properties*, 5 Ohio St. 3d 82, 84, 448 N.E.2d 1380, 1383 (1983)). Plaintiffs face the prospect of legitimate hardship if Defendant restricts Plaintiffs' access again, and Defendant, for his part, has made no showing of any hardship that would arise from a permanent injunction barring nonperformance of his obligations under the Lease. Finally, the public interest would not be disserved by an injunction ensuring Plaintiffs' access to the Leased Premises so that they may maintain the provision of wireless communication services. Accordingly, Plaintiffs are entitled to judgment as to Count 3 of their Complaint.

Because the permanent injunction will govern the relevant rights and obligations of the parties under the Lease, the Court finds that Plaintiffs' claim for declaratory judgment is therefore moot.

## C. Attorney Fees

Plaintiffs allege that they are entitled to attorney fees pursuant to the "prevailing party" clause contained in the Lease between the parties. Specifically, Section 19 of the Lease provides:

> (f) the prevailing party in any action or proceeding in court or mutually agreed upon arbitration proceeding to enforce the terms of this Agreement is entitled to receive its reasonable attorneys' fees and other reasonable enforcement costs and expenses from the non-prevailing party.

ECF No. 49-3, 11. Pursuant to the briefing before the Court, as well as the representations from counsel at the hearing on this matter, there is no dispute that the current action is a "proceeding in

[8]

court… to enforce the terms" of the Lease, that Plaintiffs are the "prevailing party" for the purposes of this section, and that Plaintiffs are therefore entitled to "reasonable attorneys [etc.]" from Defendant.[3]

The Court agrees that Plaintiffs are the "prevailing party" and thus are entitled to an award of attorney fees from Defendant. Though Defendant was granted summary judgment as to Count 1, Breach of Contract, Plaintiffs have prevailed to the extent that the present proceeding is "to enforce the terms" of the Lease. *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603, 121 S. Ct. 1835, 1839, 149 L. Ed. 2d 855 (2001) ("[A] "prevailing party" is one who has been awarded some relief by the court."). However, a hearing is necessary to determine the reasonableness of Plaintiffs' attorney fees.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment is hereby **GRANTED in part and DENIED in part**. Plaintiffs' motion as to Count 1 is hereby **DENIED**, and, *sua sponte*, summary judgment is hereby **GRANTED** to Defendant as to Count 1. Plaintiffs' motion as to Count 2 is **DENIED as moot**. Plaintiffs' motion as to Count 3 is hereby **GRANTED**, and the Court **ORDERS** that Defendant be **PERMANENTLY ENJOINED** from:

(1) Blocking, obstructing, or otherwise interfering with Plaintiffs' express access easement over the Property to access the Leased Premises and/or Cell Site;

---

[3] Defendant argues in his Response to the motion for summary judgment that Plaintiffs are not entitled to attorney fees because Plaintiffs have *also* breached the Lease. ECF No. 52, 2. Specifically, Defendant argues that Plaintiffs' failure to follow proper permitting procedures with the City of Columbus constituted a breach of the lease. Plaintiffs argue that *res judicata* bars this line of argument from Defendant because, after he initially raised the same argument as a counterclaim (ECF No. 10), the parties stipulated to the dismissal, with prejudice, of all of Defendant's counterclaims. *See* ECF No. 36. The Court agrees with Plaintiffs that Defendant cannot revive this argument following the stipulated dismissal with prejudice, and in any event, Defendant has fallen well short of setting forth a colorable claim for breach.

      (2) Blocking, obstructing, or otherwise interfering with Plaintiffs'
          maintenance and operation of the Cell Site;

      (3) Impeding, in any way, Plaintiffs' right(s) under the Lease to 24
          hour, 7 day a week access to the Leased Premises and/or Cell
          Site; and

      (4) Maintaining a padlock on the gate at the entrance of the Property
          without providing Plaintiffs a key to such lock.

Finally, summary judgment is **GRANTED** to Plaintiffs to the extent that they are entitled to an award of attorney fees pursuant to the terms of the lease. A hearing shall be set to determine the reasonableness and amount of an award of attorney fees.

       **IT IS SO ORDERED**.

                               s/ James L. Graham
                               JAMES L. GRAHAM
                               United States District Judge

DATE: April 25, 2024