IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STC Two LLC, by and through its attorney-in-fact, Global Signal Acquisitions II LLC, and Global Signal Acquisitions II LLC, | :<br>:<br>:<br>:<br>: |
| | : Case No. 2:23-cv-00764 |
| Plaintiffs, | : |
| v. | : Judge Graham |
| | : |
| Thomas E. Branham Sr., as trustee of The Tom Branham, Sr. Trust dated February 8, 2016. | : Magistrate Judge Deavers<br>:<br>: |
| | : |
| Defendant. | : |

## OPINION & ORDER

This matter is before the Court upon Plaintiffs' motion for attorney fees. Doc. 61. On April 25, 2024, this Court granted, *inter alia*, partial summary judgment on the issue of entitlement to an award of attorney fees in favor of Plaintiffs, STC Two LLC and Global Signal Acquisitions II LLC ("Plaintiffs"). *See* Op., Doc. 59. Thereafter, the parties submitted briefing on the amount of attorney fees to be awarded. That issue is now ripe before the Court. For the reasons that follow, the Court **ORDERS** an award of attorney fees to Plaintiffs in the amount of $82,995.31 and costs in the amount of $2,214.50.

## STATEMENT OF THE CASE

As stated in the Court's summary judgment opinion: Plaintiffs brought this action on February 24, 2023, seeking, *inter alia*, to enforce their rights under a lease. Pls.' Compl., Doc. 1. Defendant is Thomas E. Branham Sr., as trustee of The Tom Branham, Sr. Trust dated February

[1]

8, 2016 (the "Trust") (hereinafter "Defendant").[1] Pursuant to the terms of the Lease[2] between the parties, Plaintiffs are authorized to use the leased premises on Defendant's property "for the purposes of installing, removing, replacing, modifying, maintaining and operating, at [Plaintiffs'] expense, a personal communications service system facility." *Id.* at ¶ 31. Additionally, the lease granted Plaintiffs an easement "for reasonable access" to the personal communications service system facility (hereinafter referred to as the "Leased Premises" or "Cell Site"), and specifically provided that Plaintiffs "will have access to the [Leased Premises] 24 hours per day, 7 days per week." *Id.* In July 2022, Defendant placed a padlock on the gate through which Plaintiffs were required to pass in order to access the Leased Premises. At the same time, Defendant posted signs directing Plaintiffs (or their agents) to contact Defendant for access to the premises. The lock remained until this Court issued a Temporary Restraining Order against Defendant on March 31, 2023. Doc. 12. Throughout the period in which the gate was locked, Defendant continued to collect the rent from Plaintiffs due under the lease. Pls.' Mot. Summ. J., Ex. G, Doc. 49-8.

Ultimately, in ruling on Plaintiffs' motion for summary judgment, the Court granted partial summary judgment in favor of the Plaintiffs, enjoining Defendant from obstructing Plaintiffs' access and finding that Plaintiffs were entitled to an award of attorney fees as the prevailing party under the terms of the Lease.[3] *See* Op., Doc. 59, 8-10.

---

[1] The pertinent parcel of real property is deeded to the Trust, hence the form of pleading, though Defendant's estate arrangements do not otherwise bear on the issues now before the Court.

[2] As used herein, the "Lease" refers, collectively, to the rights and obligations of the parties as recited in the original "PCS Site Agreement," dated July 6, 1998, as well as the subsequent "First Amendment to PCS Site Agreement," dated July 22, 2013. Regardless, the parties do not dispute that these are the binding documents for the purposes of the instant matter.

[3] The Court also granted summary judgment to Defendant on the breach of contract claim, concluding that, notwithstanding Defendant's admitted breaches, Plaintiffs could not show actual damages flowing therefrom.

## DISCUSSION

Plaintiffs set forth a detailed narrative of the proceedings in this case—i.e., an overview of the work performed by the attorneys—which Defendant does not meaningfully dispute, and thus it need not be repeated here in full. As Plaintiffs summarize, they incurred attorney fees in connection with:

> (a) pre-suit efforts to understand and try to resolve the disputed issues; (b) preparing and filing the Complaint (ECF 1); (c) moving for a preliminary injunction (ECF 2); (d) obtaining a Temporary Restraining Order (ECF 12); (e) attending conferences with the Court concerning the Temporary Restraining Order and a potential resolution of the matter (see e.g., ECF 9, 24-30, 32-33); (f) preparing numerous iterations of proposed settlement documents in an effort to accommodate Defendant's ever-changing demands; (g) filing status reports pursuant to the Temporary Restraining Order (ECF 14, 17); (h) filing and succeeding on a Motion to Dismiss Defendant's Counterclaims (ECF 10, 23, 35-36); (i) preparing discovery requests, filing motions and attending hearings related to Defendant's inadequate discovery responses (ECF 41-48); (j) deposing Defendant; (k) moving for and briefing summary judgment (ECF 49, 53); (l) attending hearings related to summary judgment and settlement (ECF 54, 59); and, (m) now moving for fees.

Pl.'s Mot., Doc. 61. All told, Plaintiffs seek attorney fees totaling $134,866.50 and costs in the amount of $2,214.50. The fees account for 368.8 hours billed, at an average rate of $365.69 per hour by three (3) attorneys for Plaintiffs.

Defendant contends that the amount of attorney fees requested is excessive, primarily as to the number of hours billed on a "relatively simple fact pattern." Def.'s Resp., 3, Doc. 62.

### *Reasonableness of Attorney Fees: Lodestar Method*

The Court calculates an award of attorney fees by using the lodestar method, under which a reasonable hourly rate is multiplied by the number of hours reasonably expended on the litigation. *Lee v. Javitch, Block & Rathbone, LLP*, 568 F.Supp.2d 870, 879–80 (S.D. Ohio 2008) (citing *City*

of Burlington v. Dague, 505 U.S. 557, 562 (1992)). Because of its objectivity, "there is a strong presumption that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The reasonable hourly rate should be determined according to "the 'prevailing market rate[s] in the relevant community.'" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The reasonable number of hours will not include "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The lodestar method is designed to attract competent counsel to vindicate a person's constitutional rights but is not intended to serve as a windfall for attorneys. *Coulter v. Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986).

*Reasonable Hourly Rate*

In crafting an award of attorney fees, the Court must first determine the reasonable hourly rate based on the "prevailing market rates in the relevant community." *Adcock-Ladd*, 227 F.3d at 350. The three (3) attorneys representing Plaintiffs in this case were Mr. Bruce Moore, a partner with nine (9) years of experience, Mr. John Ebken, a partner with 21 years of experience, and Mr. Eric Wyant, an associate with roughly three and a half (3.5) years of experience. Plaintiffs represent that Mr. Moore billed at an average hourly rate of $399.57, Mr. Ebken billed at an average hourly rate of $399.05, and Mr. Wyant billed at an average hourly rate of $304.77.

Plaintiffs persuasively argue, with the support of relevant market data, that the above hourly rates are reasonable. *See* Doc. 61, 11-14 (citing 2023 Wolters Kluwer Real Rate Report). In any event, Defendant does not contest the reasonableness of the rates (*see* Doc. 62, 2),[4] and the Court finds that the average rates for the respective attorneys are indeed reasonable based on their experience and the prevailing market rates.

---

[4] Neither does Defendant contest the amount of litigation costs and expenses requested by Plaintiffs ($2,214.50).

[4]

*Reasonable Number of Hours Expended*

The Court must next determine the reasonable number of hours expended by the prevailing party. On this point, Defendant disputes the reasonableness of the amount of time Plaintiffs' counsel expended on this case, about which the Court has its own reservations as well.

In determining the reasonable number of hours expended, "the prevailing party's lawyer should be the first gatekeeper in this task, exercising the same billing judgment she would with one's client." *Hines v. DeWitt*, No. 2:13-cv-1058, 2016 WL 2342014 at *4 (S.D. Ohio May 4, 2016), *aff'd sub nom*. *Hines v. City of Columbus*, 676 Fed. App'x 546 (6th Cir. 2017) (citing *Hensley*, 461 U.S. at 434). The Court's inquiry presents "mixed questions about whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel." *Coulter*, 805 F.2d at 151. Hours which are excessive, redundant, or otherwise unnecessary will not be counted. *Hensley*, 461 U.S. at 434. While representation by multiple legal counsel "can be productive," "the danger of duplication [is] a waste of resources which is difficult to measure." *Coulter*, 805 F.2d at 151-52.

Arguing that the 368.8 hours expended are excessive, Defendant emphasizes that the case concerned only the "simple act" of Defendant "padlock[ing] the gate to the leased cell tower premises." Doc. 62, 2. This act "was clearly contrary to the terms of the lease" and so it therefore "could have been [redressed] by an early motion for judgment on the pleadings." *Id.* at 3. Of course, easier still would have been Defendant's removal of the padlock, as was always his obligation pursuant to the terms of the lease. But only Defendant could reach that lever.

Plaintiffs defend the number of hours expended as necessary and caused entirely by Defendant's conduct: "the fact of the matter is that Defendant knowingly and intentionally breached the Lease, refused to remedy his breach, then unnecessarily prolonged litigation by

making ever-changing and unreasonable settlement demands." Doc. 61, 17. The Court agrees that Defendant shoulders the blame for causing and prolonging this litigation, but that does not bless the number of hours expended by Plaintiffs' counsel as necessarily reasonable. To that end, the Court agrees with Defendant that the dispute was relatively simple, and a review of the timesheets (Doc. 61-2) suggests that excessive, redundant, or otherwise unnecessary billing contributed to the 368.2 total hours for which Plaintiffs seek an award.

The billing entries for Attorney Ebken are illustrative. Though Attorney Wyant II appeared to be the primary drafting attorney, Attorney Ebken billed significant amounts with regard to the motion for summary judgment. From the first entry referencing a motion for summary judgment, on September 28, 2023, through to the final submission of Plaintiffs' Reply on March 6, 2024, Attorney Ebken billed approximately 19.4 hours for $8,052 on entries referring to summary judgment.[5] Summary judgment is a critical point in litigation, but Attorney Ebken was not responsible for drafting the summary judgment briefing. Rather, many of the entries stated something to the effect of "Review of issues/arguments implicated by summary judgment and follow up on same." Doc. 61-2, 10/23/23 entry.

On September 28, 2023, Attorney Ebken billed 0.8 hours for "Analysis of strategy and next steps in light of landowner's ongoing recalcitrance and consider discovery and motion for summary judgment." *Id.* at 9/28/2023. Four (4) days later, on October 2, 2023, Attorney Ebken billed 0.6 hours on "Review of case management deadlines and consider MSJ in light of ever-changing settlement demands." *Id.* at 10/2/2023. Two (2) days later, he billed 0.4 hours on "Consider next steps relative to MSJ and follow up on same." *Id.* at 10/4/2023. On October 10, he

---

[5] Many of the same entries also refer to "reviewing" or "considering" settlement and/or discovery issues. Though the Court is using MSJ-related entries as examples, the same point could be made with entries related to settlement or discovery issues, which evince a similar pattern of redundancy.

billed 0.4 on "Follow up on status of latest settlement offer and review issues relative to summary judgment." *Id.* at 10/10/2023. On October 23, he billed 0.4 on "Review of issues/arguments implicated by summary judgment and follow up on same." *Id.* at 10/23/2023. Entries like these continued throughout the MSJ briefing period. Again, Attorney Ebken was not tasked with the initial drafting, and his review and revision of Attorney Wyant II's drafting was noted clearly in separate entries. *See id.* at 1/23/2024, 2/27/2024.

In addition to redundancies in Attorney Ebken's own billing entries, there are also redundancies apparent in the work billed between the three (3) attorneys. For example, on December 26, 2023, Attorney Ebken billed 0.6 for "Receipt and review of [Defendant's] amended discovery responses and consider next steps in light of the same." *Id.* at 12/26/2023. That same day, Attorney Moore billed 0.8 for "analytical comparison of amended discovery responses to original in preparation of status conference." *Id.* And Attorney Wyant II had a billing entry for "Review and analyze Defendant's amended answers and responses to [Plaintiffs'] discovery request, compare to Defendant's initial answers." *Id.*

All told, the Court agrees with Defendant's contention that this case did not require the efforts of three (3) attorneys billing at this volume, and thus the Court will exclude the hours billed by Attorney Ebken in crafting its award of reasonable attorney fees. The Court recognizes that some redundancy can be attributed to Defendant's conduct during litigation, but given the simplicity of the issues—including Plaintiffs' unambiguous contractual entitlement to the relief requested, and thus Plaintiffs' high likelihood of an award of attorney fees as the prevailing parties—the Court is also wary of awarding attorney fees for any hyper-meticulousness engendered by the anticipation of someone else being made to pay for it.

Counsel for Plaintiffs points out that the invoices for legal fees have been consistently paid by the Plaintiffs, thus supporting the reasonableness of the amount sought to be recovered.[6] The Court agrees that Plaintiffs' payments lend some weight to the reasonableness of the fees, and the Court does not doubt that all three (3) of Plaintiffs' attorneys had valuable contributions, but whether that value is properly included for the purposes of an award of reasonable attorney fees is an issue distinct from a given party's assessment of the value of the legal services provided. Stated differently, a party may have their own reasons to desire a higher level of legal services which are not necessarily correlated to reasons for a court to order another party to pay that premium.

For the reasons stated above, the Court will exclude the 114.2 hours billed by Attorney Ebken as excessive/redundant. Because Defendant prevailed on Plaintiffs' breach of contract claim, the Court will also exclude hours noted by Attorney Moore (1.2)[7] and Attorney Wyant II (11.5)[8] which the Court finds to have been expended toward Plaintiffs' breach of contact claim. The Court finds that the remaining 241.9 hours (97.8 hours billed by Attorney Moore and 144.1 hours billed by Attorney Wyant II) represents the reasonable number of hours expended toward a successful outcome for Plaintiffs.

*Lodestar Summary*

Attorney Moore billed 97.8 hours at a blended hourly rate of $399.57, for a total lodestar amount of $39,077.95. Attorney Wyant II billed 144.1 hours at a blended hourly rate of $304.77, for a lodestar amount of $43,917.36. As such, pursuant to the lodestar method, the Court will award attorney fees in the total amount of $82,995.31.

---

[6] In fact, because Plaintiffs have excluded certain redacted billing entries from the total award sought, Plaintiffs have paid *more* than the amount sought to be recovered.
[7] Specifically, as to Attorney Moore, the Court excludes portions of the following entries: 1/31/2024 (1); 3/5/2024 (0.2). Doc. 61-2.
[8] Specifically, as to Attorney Wyant II, the Court excludes the following entries entirely: 1/5/2024 (1.9 hrs); 1/10/2024 (2.6); 2/22/2024 (1.9); 2/22/2024 (1.4). Additionally, the Court excludes portions of the following entries: 1/8/2024 (1); 1/24/2024 (1); 2/27/2024 (0.2); 2/29/2024 (0.9); 3/20/2024 (0.6). Doc. 61-2.

**Defendant's September 9 Filing**

On September 9, 2024, Defendant filed (apparently *pro se*) a document described on the docket as "Notice: I Ask the Courts Response to the following Questions." Doc. 66. In the document, styled in the caption as an "ORDER," Defendant represents that he "will be going to court with [Plaintiffs] and will be asking for 12 million dollars in punitive damages." *Id.* Defendant also states that "The United States or any Court does not have power over the Jury Trial." The second page purports to list questions for the Court to answer, such as, "Is Judge Graham a Mediator? The court is supposed to be for righteousness," and "Does the Court have the power to violate ones Constitutional Rights?" *Id.* at 2. Defendant filed the same document on December 4, 2024, this time described on the docket as "Response to Defendant's Questions requested." Doc. 67. The Federal Rules of Civil Procedure do not provide for this form of filing, and nothing otherwise calls for the Court to act upon it or guides it in how to do so. That said, the Court observes that Defendant has no claim to take before a jury, having dismissed his counterclaim with prejudice in September 2023, and the Court disposed of Plaintiffs' pending claims on April 25, 2024. *See* Op., Doc. 59.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for attorney fees and costs (Doc. 61) is **GRANTED**. the Court **ORDERS** an award of attorney fees in the amount of $82,995.31, and costs in the amount of $2,214.50 to Plaintiffs, STC Two LLC, by and through its attorney-in-fact, Global Signal Acquisitions II LLC, and Global Signal Acquisitions II LLC, payable by Defendant Thomas E. Branham Sr., as trustee of The Tom Branham, Sr. Trust dated February 8, 2016. The Court further **ORDERS** that Plaintiffs shall be permitted to recoup the amounts awarded herein by way of rent abatement. Plaintiffs shall be prepared to provide to Defendant and/or the Court

upon request an accounting of the amount recouped versus the outstanding balance, and Plaintiffs shall notify the Court upon complete satisfaction of the amounts awarded herein.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: December 16, 2024